Robert Londerholm Chairman Kansas Racing Commission 3400 Van Buren Topeka, Kansas 66611-2228
Dear Mr. Londerholm:
On behalf of the Kansas racing commission, our opinion has been requested with regard to the apportionment of breakage proceeds from simulcast horse races. Specifically the board questions whether breakage proceeds should be apportioned according to each breed's participation in all races or according to each breed's participation in only live races conducted in Kansas.
"Breakage" is defined as:
 "[T]he odd cents by which the amount payable on each dollar wagered exceeds:
 "(1) A multiple of $.10, for parimutuel pools from races conducted in this state; and
 "(2) a multiple of such other number of cents as provided by law of the host jurisdiction, for interstate combined wagering pools." K.S.A. 74-8802(a). but see K.S.A. 74-8821(a).
K.S.A. 74-8821 sets forth how breakage proceeds are to be distributed. Subsection (d) of K.S.A. 74-8821 states as follows:
 "All breakage proceeds from parimutuel wagering conducted by a simulcast licensee on simulcast races displayed by the licensee shall be distributed as provided by K.S.A. 74-8836."
In turn, K.S.A. 74-8836 provides in part as follows:
"(h) Except as provided by subsection (j):
 "(1) If a simulcasting licensee has a license to conduct live horse races and the licensee displays a simulcast horse race, breakage and unclaimed winning ticket proceeds shall be distributed in the manner provided by K.S.A. 74-8821 and 74-8822, and amendments thereto, for breakage and unclaimed winning ticket proceeds from live horse races.
. . . .
 "(4) If a simulcasting licensee has a license to conduct live racing of only greyhounds and the licensee displays a simulcast horse race, breakage and unclaimed winning ticket proceeds shall be distributed in the manner provided by K.S.A. 74-8821 and 74-8822, and amendments thereto, for breakage and unclaimed winning ticket proceeds from live horse races.
. . . .
 "[(j)](4) Breakage for interstate combined wagering pools shall be calculated in accordance with the statutes and rules and regulations of the host jurisdiction and shall be allocated among the participating jurisdictions in a manner agreed to among the jurisdictions. Breakage allocated to this jurisdiction shall be distributed as provided by subsection (h)." (Emphasis added.)
Thus all breakage proceeds from simulcast horse races displayed in this state are to be remitted by the organization licensee to the commission, which must then remit such proceeds to the state treasurer for deposit in the state treasury credited to the horse breeding development fund. K.S.A. 74-8821(b). K.S.A. 74-8829 provides for the allocation of moneys credited to the horse breeding development fund:
 "(b) Moneys credited to the Kansas horse breeding development fund shall be apportioned into categories corresponding with the various breeds or horses which are participating in races conducted by organization licensees in direct proportion to each category's contribution to the fund and shall be used in each category to provide:. . . ."
Simulcast races displayed by a Kansas organization licensee are not "conducted" by that licensee; they are conducted by the operator or owner of the track at which they are actually being run. Thus horses participating in a simulcast race do not participate in "races conducted by organization licensees." Those horses are therefore not to be considered in determining the categories under K.S.A. 74-8829(b) or the categories' contributions to the fund. In our opinion this is the plain reading of the statute and in addition it serves the purpose of the statute which is to benefit Kansas-bred horses that race in this state and certain Kansas-registered stallions and mares the offspring of which participate in races conducted in this state.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm